UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMRIT SINGH, | No. 2:21–cv–1181–TLN–CKD PS |
| Plaintiff, | |
| v. | ORDER TO SHOW CAUSE |
| PALMETTO CONSULTING OF COLUMBIA, LLC, et al., | |
| Defendants. | |

On July 6, 2021, plaintiff filed a fee-paid complaint initiating this action asserting common law contract and tort claims against some twenty defendants regarding certain business dealings in North Carolina.[1] (ECF No. 1.) The court's initial review of the complaint reveals several problems that prevent plaintiff from proceeding with the present complaint as written—at least in this court. The court, on its own motion, therefore issues this order for plaintiff to show cause why he should be allowed to proceed with this action in this judicial district.

**A. Improper Venue**

The first problem is that plaintiff's complaint fails to indicate why this judicial district (the Eastern District of California) is the proper "venue" for this lawsuit. Although plaintiff himself is a resident of Sacramento, which is located in this district, that does not make this district the

---

[1] Because plaintiff is representing himself in this action, all pre-trial proceedings are referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and E.D. Cal. Local Rule 302(c)(21).

proper venue for his suit.  Venue in a civil action is generally proper in (1) a judicial district where any *defendant* resides, if all defendants reside in the same State in which the district is located, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.  28 U.S.C. § 1391(b).  Defects in venue may be raised by the court on its own where a defendant has not yet responded to the complaint and the time for doing so has not expired.[2]  See Costlow v. Weeks, 790 F.2d 1486, 1488 (9th Cir. 1986).  When a case is filed in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

### 1. *Venue Based on Defendants' Residency, § 1391(b)(1)*

One way to select a proper venue is based on the residency of the defendants.  Venue is proper in "a judicial district in which any defendant resides, *if* all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1) (emphasis added).  In this case, for venue to be proper in this district under § 1391(b)(1), the complaint would have to allege (A) that *all* defendants are "residents" of California, and (B) that at least one of the defendants resides in this district, the Eastern District of California.  The venue statute defines residency differently for natural persons, versus entities:  a natural person is deemed to reside in the judicial district in which that person is "domiciled," while an entity defendant is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  28 U.S.C. § 1391(c)(1)-(2).  "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."  Gaudin v. Remis, 379 F.3d 631, 636 (9th Cir. 2004).

The venue rules are more complex for entity defendants, but even looking just at the five individual defendants named in the complaint, it does not appear that all of them are domiciled in California.  In fact, the only individual defendant for whom plaintiff includes an allegation of

---

[2] None of the named defendants have yet appeared or responded to the complaint, and presumably plaintiff is still in the process of serving them.

residency (Matthew Holycross) is alleged to be a "citizen and resident of the State of South Carolina." (ECF No. 1 at 17.) Two of the other individual defendants (Scott Lewis and Benjamin Whitehouse) are attorneys for the law firm Butler Snow LLP (also named as a defendant), and the attachments to the complaint indicate that they work out of offices in North Carolina and Tennessee, respectively.[3] (Id. at 34, 65.) The complaint contains no clues as to the residency of the last two individual defendants (Michael Hunter and Jonathan McKenzie). But, again, if even one defendant does not "reside" in California, venue cannot be proper in this district under section 1391(b)(1). Indeed, if plaintiff wishes to pursue this litigation against all five of these individuals in addition to the entity defendants (addressed below), he likely cannot rely on section 1391(b)(1) to make venue proper in any federal district court in California.

In the event that plaintiff eliminates the non-California-resident individual defendants from his complaint, the court also provides the following explanation of why venue is not currently shown to be proper based on the residence of the primary *entity* defendant, American Transportation Group Insurance, Risk Retention Group ("ATGI"). The complaint names at least 15 entities as defendants, ranging from limited liability companies and partnerships to fully incorporated corporations and banks. But the five causes of action, themselves, are directed only to defendant ATGI—and its "agents" with respect to the defamation claim. (ECF No. 1 at 26-30.) Plaintiff alleges that ATGI "is a North Carolina corporation" that sells automobile liability insurance and that as of March 2020, its "registered principal place of business is in Wilmington, North Carolina." (Id. at 2, 16; see id. at 15 reiterating that "ATGI [is] located in North Carolina).) Plaintiff also, confusingly, at one point alleges that ATGI's principal place of business is in Sunnyvale, California (id. at 2), and one attachment to the complaint indicates a February 2020 mailing address for ATGI in the neighboring city of Cupertino, California (id. at 34).

As mentioned above, for purposes of venue, entity defendants like ATGI "reside" in any judicial district where they are "subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). However, in states (like California) with more than

---

[3] Furthermore, Butler Snow's website does not list any California office locations. https://www.butlersnow.com/locations/

one judicial district, a corporation that is subject to personal jurisdiction in the state overall at the time the action was commenced is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." Id. § 1391(d). If there is no such district, "the corporation shall be deemed to reside in the district within which it has the most significant contacts." Id.

Personal jurisdiction, a concept based in the Due Process Clause, refers to a court's "power to subject the defendant to judgment" concerning the conduct in question. J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 884 (2011). The extent to which a court can exercise personal jurisdiction over an out-of-state defendant depends on the nature and quality of the defendant's "contacts" with the state. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004) ("For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). There are two types of personal jurisdiction: "general" personal jurisdiction and "specific" personal jurisdiction. Daimler AG v. Bauman, 571 U.S. 117, 126-27 (2014). The former exists when the defendant's affiliations with the forum state "are so 'continuous and systematic' as to render them essentially at home" there. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). The latter exists when the defendant (regardless of where it is primarily located) deliberately conducted activities in the forum state, and the defendant's liability in the case arises out of or relates to those activities, or "contacts." Ford Motor Co., 141 S. Ct. at 1025; Daimler, 571 U.S. at 127.

Even assuming plaintiff could plead facts showing that ATGI is subject to personal jurisdiction (of either type) in California at large,[4] there is no indication that ATGI has sufficient

---

[4] For instance, if plaintiff could plead in good faith that ATGI's principal place of business is in fact in California, and *not* in North Carolina, ATGI would be subject to "general" personal jurisdiction in California. See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021) (paradigmatic forums where a corporation is subject to general personal jurisdiction are "its place of incorporation and its principal place of business"). Alternatively, if plaintiff could plead some other set of purposeful connection between ATGI and the State of California

4

contacts *with this district* to subject it to personal jurisdiction here in the Eastern District of California—so that it can be deemed to reside in this district for purposes of venue.  See 28 U.S.C. § 1391(d) (for states with multiple judicial districts, corporate defendants subject to personal jurisdiction in the state are deemed to reside in any district in that state "within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State"); id. § 1391(b)(1).  According to the complaint and the documents incorporated by reference, ATGI is a trucking liability insurance company operating under the supervision of the North Carolina Department of Insurance ("NC DOI").[5]  (ECF No. 1 at 2, 7-8.)  ATGI does not appear to be subject to general personal jurisdiction in this judicial district because, even assuming its principal place of business is in Sunnyvale or perhaps Cupertino, California (as opposed to North Carolina), both of those cities are located in the *Northern* District of California—not the Eastern District of California.

Nor does ATGI appear to be subject to specific personal jurisdiction in this district. Plaintiff's claims against ATGI relate only to (i) resolutions that ATGI's board of directors adopted in order to comply with North Carolina law, (ii) ATGI's resulting termination of its service agreement with plaintiff's company, MVT Insurance Services, Inc., and (iii) ATGI's lawsuit against him and MVT in North Carolina state court.  (Id. at 7, 18-19, 25.)  None of these actions have any obvious connection to this judicial district.  The only arguable California connection, based on the current pleadings, is that ATGI entered the disputed service agreement

////

---

that somehow relates to the asserted causes of action (perhaps if ATGI sells insurance policies in California as well as in North Carolina), ATGI would be subject to "specific" personal jurisdiction in this case.  See Ford Motor Co., 141 S. Ct. at 1024-25 (explaining specific jurisdiction).

[5] Plaintiff's complaint arises in part from a recent lawsuit that ATGI won against him and his company, MVT, in North Carolina Business Court.  See American Transp Group Ins. Risk Retention Group v. MVT Ins. Services, Inc., No. 20 CVS 1487, 2020 WL 6154133 (N.C. Super. Ct., Oct. 8, 2020), for a detailed overview of ATGI and its relationship with plaintiff and the NC DOI.  Plaintiff's complaint in the present case quotes at length from the North Carolina court's order awarding final judgment in favor of ATGI (ECF No. 1 at 9-15), thereby incorporating that court's findings.

with MVT, which is a California corporation,[6] most likely based in Cupertino, California.[7] But even that connection does not necessarily create specific personal jurisdiction over ATGI. The Supreme Court has stated that its "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Walden v. Fiore, 571 U.S. 277, 285-86 (2014). If the ATGI–MVT service agreement "envisioned continuing and wide-reaching contacts" in California, personal jurisdiction may well exist. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479-80 (1985). But the service agreement attached to the complaint is drafted in broad terms, and its only geographical specification is for it to be interpreted under North Carolina state law (ECF No. 1 at 45); and the complaint does not suggest that any part of MVT's services for ATGI were to be performed in California—much less within the boundaries of the Eastern District of California. That plaintiff, as "president" of MVT, might have signed the service contract at his home in Sacramento or at MVT's place of business does not change the analysis.[8] (Id. at 45.) See Walden, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum.") The current complaint therefore does not establish that ATGI resides in this judicial district under § 1391(b)(1). And in order to proceed in this district under the § 1391(b)(1) option, at least one defendant must reside in this district.

Based on the current complaint, it does not appear to the court particularly likely that any of the other entity defendants reside in this district either—or in this state, for that matter. Plaintiff will have to apply a similar personal jurisdiction/venue analysis to all of the corporate entity defendants he wishes to proceed against in this case, if he seeks to invoke § 1391(b)(1) as the basis for showing proper venue in response to this order. The venue statute's rule regarding corporate residence in states with multiple judicial districts also applies to unincorporated entities,

---

[6] See ATGI, 2020 WL 6154133, *2; ECF No. 1 at 15 (stating that "MVT is housed in California").

[7] The complaint does not specifically allege MVT's principal place of business, but the service agreement attached to the complaint specifies a Cupertino address for notices to be sent to MVT. (ECF No. 1 at 45.)

[8] There is no indication of the geographic location in which the service agreement was executed.

such as partnerships, associations, and limited liability companies.  See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 842 (9th Cir. 1986); Lindora, LLC v. Isagenix Int'l, LLC, 198 F. Supp. 3d 1127, 1146 (S.D. Cal. 2016) (conducting a "district-specific jurisdictional analysis" of LLC's residency under § 1391(b)(1) and (d)).  In order to proceed with any amended complaint in this judicial district based on defendant residencies alone, plaintiff must demonstrate to the court (A) that *all* named defendants "reside" in California, and (B) that *at least one* defendant resides in this judicial district.[9]  The current complaint fails to do so.

### 2.  *Venue Based on Underlying Events, § 1391(b)(2)*

Alternatively, plaintiff could potentially rely on § 1391(b)(2) to show that venue is proper in this district.  Under section 1391(b)(2), venue can be proper if the action is filed in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of [the] property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).

Using section 1391(b)(2) to demonstrate proper venue is much more straightforward, but plaintiff's current complaint does not indicate that any of the events at issue took place in this judicial district, or that any part of the property at issue is located in this district.  The gist of the complaint is that plaintiff believes he has been "rob[bed]" of control of ATGI—which he formerly managed under the terms of its service agreement with MVT[10]—by virtue of several allegedly unlawful board resolutions, the "fraudulent and false" lawsuit against him and MVT in North Carolina state court, and the allegedly unjustified termination of ATGI's service agreement with MVT.  (ECF No. 1 at 7, 18-19, 25.)  Plaintiff also complains that, when the contract terminated, "ATGI and its representatives" misappropriated software belonging to MVT and

---

[9] The counties that fall within the Eastern District of California are the counties of Alpine, Amador, Butte, Calaveras, Colusa, El Dorado, Fresno, Glenn, Inyo, Kern, Kings, Lassen, Madera, Mariposa, Merced, Modoc, Mono, Nevada, Placer, Plumas, Sacramento, San Joaquin, Shasta, Sierra, Siskiyou, Solano, Stanislaus, Sutter, Tehama, Trinity, Tulare, Tuolumne, Yolo, and Yuba.

[10] See ATGI, 2020 WL 6154133, *2 (explaining that ATGI is a licensed "risk retention group" that relies on contracted service providers to operate, and that from ATGI's inception until April 3, 2020, "MVT served as ATGI's managing general agent, responsible for marketing, underwriting, and other services pursuant to a service agreement between the parties").

obstructed his access to MVT's corporate and financial records, thereby converting his property. (Id. at 25, 27.)  Further, he claims that ATGI tortiously interfered with MVT's current and existing business relationships by defaming plaintiff's and MVT's business practices through unspecified statements made at unspecified locations.  (Id. at 29-30.)  There is no indication in the current complaint that any of these challenged events took place in this judicial district, the Eastern District of California.  Rather, it seems most likely that they all transpired either in North Carolina, or *possibly* in the Northern District of California with respect to the conversion claim, if MVT indeed operates out of Cupertino, California.

Plaintiff finally asserts that various fraudulent or defamatory representations were made against him by certain defendants, without specifying the contents of most of those statements or where and when most of them were made.  (ECF No. 1 at 8, 24-26.)  Plaintiff does quote a purportedly defamatory statement that ATGI allegedly posted to its website regarding its lawsuit against MVT, but even assuming that web post could somehow qualify as an action taking place in this judicial district, it does not amount to a "substantial part of the events" giving rise to this suit.  (Id. at 25-26.)  The only other allegedly defamatory statement described in any detail is that at an April 3, 2020 meeting, defendant Holycross made certain false statements regarding plaintiff and MVT.  Although the location of the April 3, 2020 meeting is not alleged, it is highly unlikely that it took place in the Eastern District of California, given that ATGI is incorporated in North Carolina and the complaint suggests that ATGI's board and shareholder meetings regularly took place in North Carolina.  (See id. at 23-24 (describing special shareholder meeting noticed to occur in Wilmington, North Carolina).)

If plaintiff wishes to demonstrate that venue is proper in this judicial district under section 1391(b)(2), any amended complaint must include far more detail as to the location in which the disputed events occurred.  Ultimately, the pleadings must satisfy the court that either (A) "a substantial part of the events or omissions" at issue in the case took place in this judicial district, or (B) "a substantial part of [the] property" involved in this suit is located in this judicial district.  28 U.S.C. § 1391(b)(2).  The present complaint gives next to zero indication that this suit has any connection to the Eastern District of California.  Unless plaintiff can demonstrate

otherwise, venue must be found improper under section 1391(b)(2).

### 3. *Venue Catch-all Provision, § 1391(b)(3)*

The last way venue can be proper is "if there is no district in which an action may otherwise be brought" as provided in subsections (b)(1) and (b)(2), then venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3). However, section 1391(b)(3) does not appear to apply to this case because venue likely could be proper in another judicial district. It is unclear whether, with so many defendants, venue could be proper anywhere under section 1391(b)(1) based on common residency. Still, there appears to be a strong likelihood that a substantial part of the events at issue occurred in one of the three federal judicial districts in North Carolina—or *perhaps* in the Northern District of California—making venue proper in one of those districts under section 1391(b)(2).

Even if section 1391(b)(3) did apply—assuming no district could provide a proper venue under subsections (b)(1) and (b)(2)—the current complaint does not show that any defendant is subject to personal jurisdiction in this judicial district. As discussed above, there is no indication that any individual defendant is domiciled in California or that any entity defendant is "essentially at home" in California giving rise to general personal jurisdiction over them, see Goodyear, 564 U.S. at 919; nor does it appear that any defendant has sufficient contacts with the State of California, related to this lawsuit, that give rise to specific personal jurisdiction over them, see Ford Motor Co., 141 S. Ct. at 1025.

If plaintiff can show otherwise in an amended complaint—and if he can show that there is no other judicial district in which venue could be proper under subsections (b)(1) and (b)(2)— however, he may fall back on section 1391(b)(3) to show venue is proper here.

### B. Insufficient Statement of Claim, under Rule 8

The second problem with plaintiff's complaint, separate from the above venue problems, is that it does not comply with Rule 8 of the Federal Rules of Civil Procedure. Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he 'short and plain statement' must provide *each*

*defendant* with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 346 (2005) (emphasis added). A court may dismiss a complaint, on its own motion, for failure to comply with Rule 8. Nevijel v. N. Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981). A Rule 8 dismissal is allowed even if "a few possible claims" can be identified and even if the complaint is not "wholly without merit." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1179 (9th Cir. 2011). Moreover, while the pleadings of unrepresented parties are interpreted liberally, they still must meet a minimum threshold that provides defendants sufficient notice of the allegations against them. Brazil v. U.S. Dep't of the Navy, 66 F.3d 193, 199 (9th Cir. 1995).

Although plaintiff lists about twenty defendants, the causes of action are asserted only against ATGI—and its unspecified "agents" with respect to the defamation claim. (ECF No. 1 at 26-30.) Allegations against many of the other named defendants are scattered across the thirty-page complaint, including in a list of "wrongdoings" that is separate from the five causes of action. (Id. at 8-9.) The complaint contains almost no allegations against the second half of the listed defendants, which are various financial institutions and unknown entities identified only by acronym. For instance, plaintiff merely states that Bank of the West gave $3 million to the new board of ATGI and blocked him from accessing "the account" at some point. (Id. at 8.) As to defendant "CIBC Bank" and "US Bank," he merely lists dollar amounts with no explanation; and for Arizona Premium Finance and "Quickbase Software," he writes only fragments of a sentence that do not give any clue as to what his claim against them is. (Id. at 2, 8-9.) The complaint includes no allegations at all against six of the listed defendants, and the court cannot even tell what the names of most of these entities are, since plaintiff gives only their acronyms. (See id. at 1-2 (listing "Multiverse, PFS, ETI, . . . CB Group LLC, RIFB, FMSCA").)

The current complaint fails to give sufficient notice to any of the defendants—with the exception of ATGI—of what plaintiff's claims are against them and the grounds upon which they rest. See Dura Pharms., 544 U.S. at 346. Any amended complaint filed in response to this order to show cause must correct these deficiencies, or risk being dismissed for failure to comply with Rule 8 in addition to, or instead of, the venue defects discussed above. Any amended complaint

10

must set forth the causes of action in separate sections and clearly identify which defendants are

allegedly at fault for each cause of action (e.g., First Cause of Action against defendants X, Y,

and Z; Second Cause of Action against defendants R and S; etc.). Under each section, plaintiff

must then list the specific factual allegations supporting that particular claim. (For brevity,

plaintiff may refer to specific prior paragraphs.) For each claim, plaintiff must allege what

specific conduct each defendant engaged in, and how that conduct harmed him.

The court notes that, in addition to the venue and Rule 8 issues discussed in this order,

plaintiff may encounter any number of other problems with litigating this case.[11] However, the

court will leave further issues for another day, as it first remains to be seen (i) whether and how

plaintiff might clarify his complaint, and (ii) whether this court is a proper venue for the case.

### C. Order to Show Cause

The above-identified defects could potentially be overcome by amendment. Accordingly,

the court allows plaintiff an opportunity to show cause why the case should proceed in this court

_____

[11] One potential problem is that plaintiff may lack "standing" to bring certain claims if he cannot show how he, personally, was injured by the conduct complained of. See Novak v. United States, 795 F.3d 1012, 1017-18 (9th Cir. 2015) (Article III standing consists of (1) "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) a likelihood "that the injury will be redressed by a favorable decision." (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)); Hong Kong Supermarket v. Kizer, 830 F.2d 1078, 1081 (9th Cir. 1987) (discussing one of the prudential limitations on standing, requiring the plaintiff to "assert his own rights, rather than rely on the rights or interests of third parties"). For instance, it is hard to see how plaintiff would have standing to dispute "[w]hich individuals are rightfully the officers and directors of ATGI" (ECF No. 1 at 24), given that he is not alleged to be a board member or shareholder of ATGI.

Another looming problem is that various judicial doctrines might prevent the court from hearing the case if it contains a "de facto appeal" of the final judgment of the North Carolina Business Court in the prior suit, or prevent the court from ruling on claims or issues already decided in that suit. See Carmona v. Carmona, 603 F.3d 1041, 1050 (9th Cir. 2010) (discussing Rooker-Feldman doctrine which "bars suits brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"); see also New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001) ("Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim.").

by filing a First Amended Complaint that addresses the issues discussed above.[12]  Plaintiff may, if he wishes, file an accompanying written response explaining his arguments as to why venue is proper in this judicial district.

If plaintiff cannot in good faith make sufficient allegations that demonstrate venue is proper in this court, he may proceed in one of two ways.  First, he may instead file a notice of voluntary dismissal, see Fed. R. Civ. P. 41(a)(1)(A)(i), which would leave him free to re-file this action in another court of his choosing where he believes venue is proper (which would require paying a new filing fee in that court).  Alternatively, plaintiff may file (i) a First Amended Complaint that shows how venue is proper in another federal judicial district, and (ii) a short written response to this order (a) identifying which federal judicial district would be the proper venue,[13] and (b) providing arguments as to why the case should be transferred to that district (without payment of a new filing fee) under 28 U.S.C. § 1406(a).

As stated at the outset, when a case is filed in the wrong district, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Thus, if plaintiff requests transfer of his case, he must demonstrate (A) that the proposed transferee district would be a proper venue, and (B) that transfer would serve the interest of justice.  See Costlow, 790 F.2d at 1488 (stating that § 1406(a) "requires a transfer . . . only in cases where it is in 'the interest of justice'").  If the court determines that the First Amended Complaint fails to correct the Rule 8 deficiencies identified above, or otherwise would not serve the interest of justice, the undersigned may nevertheless recommend dismissing the case for improper venue—rather than transferring it.  See id. (affirming decision to dismiss, rather than transfer, case that was filed in improper venue).

_____

[12] The filing of a First Amended Complaint will not affect plaintiff's ability to later file an amended complaint as a matter of course pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.  See Ramirez v. Cty. of San Bernardino, 806 F.3d 1002, 1007 (9th Cir. 2015).

[13] Maps of the federal judicial districts in California and North Carolina, along with lists of the counties within each of them, can be found on the U.S. Marshals Service webpage at https://www.usmarshals.gov/district/ca-e/general/area.htm and https://www.usmarshals.gov/district/nc-e/general/area.htm.

If plaintiff chooses to file a First Amended Complaint, plaintiff is informed that an amended complaint supersedes the original complaint, and once the First Amended Complaint is filed, the original complaint no longer serves any function in the case. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.

On a final note, the court acknowledges plaintiff's stated frustration with the justice system and feelings of powerlessness regarding the events underlying this case. (ECF No. 1 at 3-4.) But that does not exempt plaintiff from following the rules for litigating in federal court. The court issues this order in an effort to inform plaintiff of those rules, which it applies evenly in all cases.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that

1. **Within 30 days** of the entry of this order, plaintiff shall SHOW CAUSE why this action should not be dismissed for improper venue, under 28 U.S.C. § 1406(a), or for failure to comply with Fed. R. Civ. P. 8(a)(2). Plaintiff may satisfy this order to show cause in one of the following ways:

   a. By filing a First Amended Complaint that addresses the deficiencies described in this order and demonstrates that venue is proper in this district (along with an optional brief in support);

   b. By filing (i) a First Amended Complaint that addresses the deficiencies described in this order and demonstrates that venue is proper in *a different* federal judicial district, and (ii) a brief in support that identifies the district that would be a proper venue and demonstrates that transfer to that district would serve the interest of justice; or

   c. A notice of voluntary dismissal of this action under Rule 41(a)(1)(A)(i).

////
////
////
////

2. Failure to comply with this order by the deadline may result in the imposition of sanctions, including potential dismissal of the action with prejudice pursuant to Federal Rule of Civil Procedure 41(b).

Dated: July 16, 2021

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

19.sing.1181

14